UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
at Covington

| | |
|---|---|
| TEJINDER SINGH, | ) |
| | ) |
|    Petitioner, | ) Civil Action No. 2:25-cv-00157-SCM |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) **AND ORDER** |
| KRISTI NOEM, et al., | ) |
| | ) |
|    Respondents. | ) |
| | ) |

\*\*\* \*\*\* \*\*\* \*\*\*

In recent months, federal courts across the nation have been confronted with habeas petitions asserting that alien detainees who entered the country without permission are entitled to a bond hearing. Most courts have agreed with this position, and the Petitioner in this case argues that this Court should follow their lead. Sometimes a widely held view is widely held because it is correct. But sometimes the few have it right. Such is the case here. Under the plain language of the relevant statute, the Petitioner is an "applicant for admission." *See* 8 U.S.C. § 1225(a). And the same statute requires that applicants for admission "shall be detained" during removal proceedings. *Id.* § 1225(b)(2)(A). Thus, because the Petitioner must be detained, he is not entitled to a bond hearing. Accordingly, his habeas petition is denied.

**I. Facts**

The material facts are undisputed. The Petitioner, Tejinder Singh, is an

Indian citizen who came to the United States in 2017. [Dkt. 1 at 1]. The Petitioner "entered the United States without permission or parole" in July 2017 by "crossing the U.S.-Mexico border." [*Id.* at 2, 5]. The Petitioner was apprehended and detained by United States Immigration and Customs Enforcement in 2017, was later served with a Notice to Appear charging him with removability due to entering the United States without being admitted or paroled, and was given a bond hearing. [*Id.* at 5]. An immigration judge released the Petitioner on bond on August 21, 2017. [Dkt. 1-4 at 2]. He then applied for asylum on December 11, 2017. [Dkt. 1 at 6].

In 2022, the Petitioner pled guilty to DUI in Indiana state court after he drove his car into a house. [Dkt. 1-6 at 3, 15, 20, 24]. In 2023, the Petitioner's United States citizen sister filed a Form I-130 Petition for Alien Relative on his behalf, which was approved on April 28, 2025.[1] [Dkt. 1 at 6; Dkt. 1-7 at 2]. On July 18, 2025, ICE arrested the Petitioner pursuant to a warrant and detained him pending the result of his immigration proceedings. [Dkt. 1 at 7; Dkt. 13].

The Petitioner requested a bond hearing in his immigration proceedings on September 5, 2025. [Dkt. 1 at 7]. On September 29, 2025, the immigration judge assigned to the Petitioner's case concluded that his request was barred by the Board

---

[1] An approved Form I-130 does not itself grant lawful immigration status. Approval of Form I-130 is the first step for the Form I-130 petitioner (*i.e.*, Singh's sister) to help an eligible relative (*i.e.*, Singh) establish lawful status in the United States. *See Foul v. Mukasey*, 256 F. App'x 785, 786 (6th Cir. 2007) (Form I-130 is "the first step toward obtaining permanent residency based on marriage to a citizen"; the "second step" is filing "a Form I-485 application to adjust status.").

.

2

of Immigration Appeals' ruling in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), that aliens situated like the Petitioner are not entitled to bond hearings under 8 U.S.C. § 1225(b)(2). [Dkt. 1 at 7; Dkt. 7-1 at 1 ("[T]his Court lacks authority to hear bond requests or to grant bond to aliens who are present in the United States without admission.")]. The immigration judge therefore ruled that the Petitioner was not entitled to a bond hearing. The immigration judge ruled in the alternative that even if the Petitioner were entitled to a bond hearing, he should be denied bond because his DUI offense and the surrounding circumstances rendered him "a danger" to the community under binding BIA precedents. [Dkt. 7-1 at 1–2]. The immigration judge similarly ruled in the alternative that the Petitioner's criminal history indicated that he was "a flight risk" such that the Petitioner was ineligible for bond.[2] [*Id.* at 2].

The Petitioner then filed his Petition for a Writ of Habeas Corpus and his Motion for injunctive relief on October 15, 2025. [Dkt. 1; Dkt. 2]. He argues that his detention without bond "flouts binding regulations promulgated by the Attorney General, misreads the plain text of the INA [*i.e.*, the Immigration and Nationality Act], and ignores decades of legislative and administrative history." [Dkt. 10 at 3]. More specifically, he argues that the Department of Homeland Security's policy of detaining all "noncitizens who have entered the United States without inspection"

---

[2] The Petitioner argues that the immigration judge's ruling in the alternative was insufficient to satisfy his entitlement to a bond hearing. [Dkt. 1 at 7, 11, 12]. Given the Court's disposition of this case, the sufficiency of the immigration judge's alternative bond ruling is irrelevant. But even so, the Petitioner is incorrect about that ruling. The immigration judge considered evidence of the Petitioner's circumstances and decided that those circumstances made bond inappropriate under the applicable legal standards. *See* [Dkt. 7-1 at 1–2].

under 8 U.S.C. § 1225(b)(2) without a bond hearing violates his right to due process under the Fifth Amendment and is inconsistent with the Immigration and Nationality Act and the Administrative Procedure Act. [Dkt. 1 at 10–12].[3] According to the Petitioner, his detention is governed by 8 U.S.C. § 1226 instead of 8 U.S.C. § 1225(b), meaning he is entitled to a bond hearing. [*Id.* at 2]. Thus, he seeks relief through a writ of habeas corpus, which "is at its core a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). And he asks this Court to reject *Yajure Hurtado*'s interpretation of the INA, agree with "over 70 [other] judges" who concluded that detention like his is unlawful, and endorse his understanding of the INA. [Dkt. 10 at 2]. He requests immediate release from federal custody or, alternatively, "a constitutionally adequate bond hearing." [Dkt. 1 at 16].

After Responses and a Reply were filed, this Court held a hearing on the Petition and Motion on December 11, 2025. [Dkt. 14].

## II. Analysis

This is a case of dueling statutes. It all boils down to one question: Is the Petitioner's detention governed by 8 U.S.C. § 1225(b)(2), which would preclude him from receiving a bond hearing, or is it governed by 8 U.S.C. § 1226(a), which would allow a bond hearing?

This question has arisen in numerous cases nationwide due to the BIA's

---

[3] Singh initially advanced two other grounds for relief based on his allegedly warrantless arrest, Counts Three and Four in his Petition. [Dkt. 1 at 13–16]. However, the federal Respondents produced and filed the warrant for Singh's arrest with this Court. [Dkt. 13]. During the December 11, 2025, hearing in this matter, Singh's counsel conceded that the warrant disposed of those two grounds for relief and left only the matter of statutory interpretation for the Court to decide.

determination in 2025 that all aliens who have not been admitted into the country must be detained without bond "unless an immigration officer determines that they are 'clearly and beyond a doubt entitled to be admitted.'" *Yajure Hurtado*, 29 I&N Dec. at 228 (quoting 8 U.S.C. § 1225(b)(2)(A)). Following that decision, the Department of Homeland Security began detaining aliens situated similarly to the Petitioner without bond hearings. This signaled a shift in practice. Previously, aliens who were present in the United States without admission and who were apprehended within the United States generally were given a bond hearing pursuant to 8 U.S.C. § 1226(a). Indeed, the Petitioner himself was given a bond hearing when he was initially detained in 2017. [Dkt. 1-4 at 2; Dkt. 10 at 2]. But now, during the Petitioner's present detention, the BIA's more recent interpretation of the INA in *Yajure Hurtado* has prevented him from receiving another bond hearing. As explained above, the Petitioner argues that his detention without bond is unlawful. He believes the prior agency practice reflects the correct interpretation of the INA.

Pointing to *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), the Petitioner argues that this Court should not defer to the new interpretations of the BIA and the Department of Homeland Security. Fair enough. The Petitioner is correct that agency deference is a thing of the past. *See id.* at 392. But that just means the Court must exercise independent judgment in saying what the law is. *See id.* at 385 (quoting *Marbury v. Madison*, 1 Cranch 137, 177 (1803)). It does not mean that the Court is obligated to conclude that the BIA and the Department of Homeland Security are wrong and the Petitioner is right. To the contrary, the Petitioner is the

5

one who is wrong. A straightforward application of the plain language of the relevant statute compels the conclusion that he must be detained during his removal proceedings. Thus, he is not entitled to a bond hearing.

### A. Section 1225(b)(2) applies to the Petitioner, thereby making him subject to mandatory detention.

The two statutes that potentially govern the Petitioner's detention are 8 U.S.C. § 1225(b)(2) and 8 U.S.C. § 1226(a). In relevant part, § 1225(b)(2)(A) provides:

> [I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

And § 1226(a), in relevant part, provides:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
>
> (1) may continue to detain the arrested alien; and
>
> (2) may release the alien on—
>
> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>
> (B) conditional parole . . . .

The scope of the two statutes is obviously different. Section 1226(a) potentially applies to any alien who is arrested on a warrant issued for removal proceedings. Section 1225(b)(2), however, is narrower. It applies to a smaller subset of aliens who are "applicant[s] for admission." *Id.* § 1225(b)(2). Thus, the key here is determining whether the Petitioner is an "applicant for admission." If so, his detention is governed

by § 1225(b)(2). If not, it is governed by § 1226(a), which would allow for a bond hearing.

The term "applicant for admission" is a term of art. It is not limited solely to those aliens who have literally submitted an application for admission. Rather, § 1225(a)(1) specifies that:

> An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

And the term "admitted" is defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). So an "applicant for admission" is any alien who is either literally applying for admission or else is present in the United States without having received permission to be here.

In this case, the Petitioner concedes that he falls within the latter group, so he is unquestionably deemed an "applicant for admission" under § 1225(a)(1). This point is dispositive. Because he is an "applicant for admission," § 1225(b)(2)(A) requires that he "shall be detained" during his removal proceedings unless an immigration officer determines that he is "clearly and beyond a doubt entitled to be admitted." No such determination has been made here. Accordingly, the plain language of § 1225(b)(2)(A) requires that the Petitioner be subject to mandatory detention. The plain language of the statute permits no other conclusion.

The Petitioner resists this straightforward application of the statute on several grounds. Each of them is unavailing.

7

### 1. Mandatory detention under § 1225(b)(2)(A) is not limited to "arriving" aliens.

The Petitioner claims that § 1225(b)(2)(A) applies only to aliens who are "arriving" in the United States, not those who have been here for years, as he has. This argument is belied by the plain language of § 1225. To be sure, § 1225(b)(1) applies to aliens who are "arriving" in the United States for the first time. *See id.* § 1225(b)(1)(A)(i) ("If an immigration officer determines that an alien . . . who is arriving in the United States . . . is inadmissible . . ., the officer shall order the alien removed from the United States . . . ."). But § 1225(b)(2)(A) is the section that requires the Petitioner to be detained. And nothing in § 1225(b)(2)(A) limits its applicability to "arriving" aliens. In fact, the word "arriving" does not even appear in § 1225(b)(2)(A). As other courts have recognized, § 1225(b)(1) applies to "arriving aliens," but § 1225(b)(2) is a "catchall" provision that applies to all other aliens who have not been granted admission to the country. *See Mejia Olalde v. Noem*, No. 1:25-CV-00168-JMD, 2025 WL 3131942, at *3 (E.D. Mo. Nov. 10, 2025) (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018)). The Petitioner falls within the latter group, so § 1225(b)(2) applies to him.

### 2. The Petitioner is "seeking admission."

Next, seizing on the language in the second clause of § 1225(b)(2)(A), the Petitioner contends that mandatory detention under § 1225(b)(2)(A) cannot apply to him because he is not "seeking admission." In other words, the Petitioner argues that § 1225(b)(2)(A) does not apply to all aliens who are "applicant[s] for admission," but instead applies only to those aliens who are "applicant[s] for admission" *and* who are

8

also "seeking admission." His argument, however, misreads the statutory text. And it is nonsensical. The "seeking admission" language is not additional limiting language. It does not further narrow the class of aliens to whom § 1225(b)(2)(A) applies beyond those who are "applicant[s] for admission."

The Petitioner's argument would be compelling if the statutory language said that § 1225(b)(2)(A) applies "in the case of an alien who is an applicant for admission *and who is also seeking admission*." But the statute says nothing of the sort. Instead, it simply says that the statute applies "in the case of an alien who is an applicant for admission," *id.* § 1225(b)(2)(A), which the Petitioner plainly is.

Similarly, the Petitioner's argument would be compelling if the statutory text said that detention is mandatory "if the examining immigration officer determines that an alien *is* seeking admission *and also* is not clearly and beyond a doubt entitled to be admitted." But, again, the statute says nothing of the sort. The statute does not require the immigration officer to make *both* a determination that the alien in question is seeking admission *and* a determination that the alien is not clearly and beyond a doubt entitled to be admitted. Instead, it requires only a determination that the alien "is not clearly and beyond a doubt entitled to be admitted." *Id.* § 1225(b)(2)(A). The placement of the word "is" clearly demonstrates that the determination being made by the immigration officer concerns nothing more than the alien's entitlement to be admitted. Thus, the phrase "seeking admission" does not pertain to any element that must be found by the immigration officer before mandatory detention applies.

9

Rather than interpreting the "seeking admission" language as a separate requirement that must be met for § 1225(b)(2)(A) to apply, the more natural and logical reading is to view it as an appositive for the "applicant for admission" language. That is, the phrase "alien seeking admission" is simply another way of identifying the "alien who is an applicant for admission." This is the most rational interpretation not only because—as explained above—the statutory text contains no language establishing those two clauses as independent requirements, but also because it makes no sense to think of an "applicant for admission" as anything other than a person who is "seeking admission." What else would an applicant for admission be doing if not seeking admission? The Petitioner has no answer for this. And, indeed, there is none. After all, "[t]o 'seek' is a synonym of to 'apply' for." *Mejia Olalde*, 2025 WL 3131942, at *3. Thus, one who is an "applicant for admission" is, by definition, "seeking admission." This means that because the Petitioner is deemed to be an "applicant for admission," he is likewise deemed to be "seeking admission."

Consider also the implications of the Petitioner's argument. If he is correct, then that means that aliens who are present in the country without permission will be treated more favorably if they decline to take any measures to obtain permission than if they actively seek out permission to remain here. Those who refuse to do anything that would constitute "seeking admission" in the Petitioner's view would not be subject to mandatory detention, while those who do seek permission to stay in the United States would be subject to mandatory detention. That makes no sense.

But even aside from all this, it is clear from the Petitioner's individual

10

circumstances that he is "seeking admission." After all, he is contesting his removal. This necessarily means that he is seeking permission to remain in the country. Plus, he could concede his removability and "depart immediately from the United States," in which case he would no longer be deemed an "applicant for admission." 8 U.S.C. § 1225(a)(4). But he has not done that. Moreover, he is pursuing the Form I-130 Petition for Alien Relative process. What is the point of doing this if he is not "seeking admission" to the country? Again, the Petitioner has no answer. He is "seeking admission." So even if the "seeking admission" language in § 1225(b)(2)(A) were a separate requirement for the application of § 1225(b)(2)(A)'s mandatory-detention provision—which it is not—that requirement would be satisfied here.

### 3. Applying § 1225(b)(2)(A)'s mandatory-detention provision to the Petitioner does not render the recent Laken Riley Act superfluous.

The Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025), was enacted in 2025. It amends 8 U.S.C. § 1226(c) to require that aliens who are present in the country without having been admitted must be detained by the federal government (the "Government") immediately upon their release from custody by state or local officials if they have committed certain state crimes. Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3, 3 (2025). That is, it adds a new temporal component to § 1226(c). Section 1226(a)—the bonding provision that the Petitioner says governs his detention—was not amended by the Laken Riley Act, but it cross-references § 1226(c), stating that aliens who fall under § 1226(c) are not eligible to be released on bond. *Id.*; 8 U.S.C. § 1226(a). The Petitioner argues that this proves his point. In other words, he contends that the import of the Laken Riley Act is to preclude bond—and

11

therefore impose mandatory detention—for unadmitted aliens who have committed the crimes specified in the Act. This means—in his view—that unadmitted aliens were not already subject to mandatory detention under § 1225(b). Otherwise, according to the Petitioner, there would be no point to the Laken Riley Act because the aliens who fall within its provisions would have already been subject to mandatory detention. Thus, in the Petitioner's view, the Laken Riley Act cannot be given independent meaning unless the aliens to whom it applies were not already subject to mandatory detention under § 1225(b). The Petitioner's view, however, represents a fundamental misunderstanding of the Laken Riley Act.

The point of the Laken Riley Act is not to mandate the detention of aliens who otherwise would *not* be subject to mandatory detention, but instead to mandate the *timing* of the detention of certain aliens. The key here is that the provisions of the Laken Riley Act specify *when* certain aliens are to be detained. In this respect, the Laken Riley Act "adds something that Section 1225(b)(2)(A) lacks." *Gomez Hernandez v. Lyons*, No. 1:25-CV-216-H, 2026 WL 31775, at *7 (N.D. Tex. Jan. 6, 2026). More specifically, the effect of the Laken Riley Act is to require that an unadmitted alien who has been charged with or convicted of certain triggering offenses—like "burglary, theft, larceny, shoplifting," or certain violent crimes—must be detained "*when* the alien is released" from custody on the triggering offense. 8 U.S.C. § 1226(c)(1) (emphasis added). Thus, properly understood, the Laken Riley Act is about the timing of detention. *See Gomez Hernandez*, 2026 WL 31775, at *7 (the Laken Riley Act "regulates when the Attorney General must take aliens into

12

custody" and provides "a temporal gloss on the Executive's detention authority" in light of the fact that § 1225(b) "does not include a timeline").

The following hypothetical illustrates this point: John Doe is an alien who entered the country without permission, and while he is in the country, he is convicted of a burglary, which is one of the predicate offenses for application of the Laken Riley Act. 8 U.S.C. § 1226(c)(1)(E)(ii). Before the Laken Riley Act, he could have simply been released from custody after serving his sentence for the burglary. Nothing would have prohibited that. The correct interpretation of § 1225(b)(2)(A) would have required Doe to be detained if and when removal proceedings were initiated against him, but nothing would have prevented him from being released from state custody after serving his time for the burglary. After the Laken Riley Act, however, it is now mandatory that he be taken into custody by federal authorities "when [he] is released" from detention on the burglary. 8 U.S.C. § 1226(c)(1). Thus, the Laken Riley Act simply filled in a gap that previously allowed removable aliens to be released from state or local custody and go back to living amongst the country's general population after having committed certain crimes. Now, in the wake of that Act, aliens like the hypothetical John Doe must go straight into federal custody after being released from state or local custody. This has nothing to do with the mandatory-detention provision under § 1225(b)(2)(A), much less is it pointlessly redundant of that provision. In short, this all means that the Laken Riley Act can be given independent meaning.

13

### 4. The novelty of the Government's interpretation and enforcement of § 1225(b)(2)(A) does not make it incorrect.

Finally, a common theme running throughout the Petitioner's arguments is the suggestion that the Government's interpretation of § 1225(b)(2)(A) cannot be correct because the law has never been enforced that way before. It might be true that the Government has not previously interpreted and enforced §§ 1225 and 1226 the way it is now, but that does not mean the Government is wrong. To the contrary, it appears that the Government previously interpreted and enforced the law incorrectly, and it has now corrected its prior mistakes.

The Petitioner suggests that the Government should be bound by its prior interpretation, or that an agency can effectively re-write a statute by enforcing it contrary to its plain language for a long time, much the way one can adversely possess property simply by acting as the owner for a long time. But that is not how things work. Estoppel generally does not apply to the Government when it comes to law enforcement. *See Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 60–61 (1984) ("[I]t is well settled that the Government may not be estopped on the same terms as any other litigant" because public policy considerations let the Government alter its positions in ways private parties cannot.); *see also FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (The Government may change its interpretation of a statute when "the new policy is permissible under the statute," "there are good reasons for it," and "the agency *believes* it to be better."). And an agency cannot adversely possess the text of a statute. The Court's job is to interpret and apply the law as it was *written by Congress*, not as it was historically interpreted

14

and enforced by agencies. Thus, while it might be factually true that the BIA and the Department of Homeland Security have not previously interpreted the law as they do now, that point is legally irrelevant.

One final point on this issue: The Petitioner's suggestion that the Government's longstanding practices should prevail is inconsistent with his own argument concerning agency deference. If the Court cannot defer to an agency's interpretation of the law, then it must be all the more true that the Court cannot defer to a prior agency interpretation that the agency itself has since rejected. What matters is the Court's interpretation of the statutory language, not the Government's current interpretation or its prior interpretation. And the statutory language compels the conclusion that the Petitioner is subject to mandatory detention under § 1225(b)(2)(A).

**B. The Petitioner's detention does not violate due process.**

The Petitioner contends that his detention violates his right to due process under the Fifth Amendment to the United States Constitution. It is true that aliens like the Petitioner have due process rights even though they are present in the country without ever having been admitted. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). However, their right to due process goes no further than the process Congress has chosen to give them. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103,

138–39 (2020). Here, the Petitioner is receiving that process. Thus, he has no valid claim under the Fifth Amendment.

### C. The Petitioner does not have a viable claim under the Administrative Procedure Act.

Finally, the Petitioner's arguments regarding his detention also invoke the Administrative Procedure Act. [Dkt. 1 at 11–12]. But to state a claim under the APA, the Petitioner must show that there is "no other adequate remedy in court." *See Haines v. Fed. Motor Carrier Safety Admin.*, 814 F.3d 417, 427 (6th Cir. 2016) (quoting *Bangura v. Hansen*, 434 F.3d 487, 500 (6th Cir.2006)); *see also* 5 U.S.C. § 704. Here, the Court is satisfied that habeas corpus provides an adequate remedy for the Petitioner's claims. *Cf. Trump v. J. G. G.*, 604 U.S. 670, 674 ("habeas corpus, not the APA, is the proper vehicle" for review of detention and removal of aliens under the Alien Enemies Act) (Kavanaugh, J., concurring). Because the writ of habeas corpus provides the Petitioner with an adequate remedy relating to his detention, APA review is inapplicable here.

### IV. Conclusion

District Courts within this Circuit—and all over the nation—are wrestling with issues like those the Petitioner has raised. Indeed, another case in this District arrived at a different outcome after thorough analysis of a similar petition. *See Moyao Roman v. Olson*, No. 2:25-cv-169-DLB-CJS, 2025 WL 3268403 (E.D. Ky. Nov. 24, 2025). While this Court appreciates the thoughtful and thorough analyses of the courts that have reached the opposite conclusion, it agrees with those that have been convinced that § 1225(b)(2)(A) compels mandatory detention for those like the

16

Petitioner. *See, e.g., Mejia Olalde*, 2025 WL 3131942; *Gomez Hernandez*, 2026 WL 31775; *P.B. v. Bergami*, No. 3:25-CV-2978-O, 2025 WL 3632752 (N.D. Tex. Dec. 13, 2025); *Cabanas v. Bondi*, No. 4:25-cv-04830, 2025 WL 3171331 (S.D. Tex. Nov. 13, 2025); *Altamirano Ramos v. Lyons*, No. 2:25-cv-09785-SVW-AJR, 2025 WL 3199872 (C.D. Cal. Nov. 12, 2025).[4]

For the foregoing reasons, Singh's Petition for a Writ of Habeas Corpus, [Dkt. 1], is hereby **DENIED**.[5] And because Singh's Emergency Motion for Injunctive Relief, [Dkt. 2], rises and falls with his Petition, it is hereby **DENIED** as moot. A separate Judgment will be entered.

Signed this 9th day of January, 2026.



S. Chad Meredith, District Judge
United States District Court
Eastern District of Kentucky

---

[4] Many other district courts concur in well-reasoned opinions. *See, e.g., Rodriguez v. Noem*, No. 9:25-CV-320, 2025 WL 3639440 (E.D. Tex. Dec. 10, 2025); *Sandoval v. Acuna*, No. 6:25-CV-1467, 2025 WL 3048926 (W.D. La. Oct. 31, 2025); *Vargas Lopez v. Trump*, No. 8:25CV526, 2025 WL 2780351 (D. Neb. Sept. 30, 2025); *Chavez v. Noem*, No. 3:25-cv-02325-CAB-SBC, 2025 WL 2730228 (S.D. Cal. Sept. 24, 2025).

[5] One of the Respondents in this matter, Marc Fields, contends that he is not a proper Respondent in this case because he is not the Petitioner's legal or immediate custodian. [Dkt. 8 at 2–3]. Due to this Court's disposition of the Petition, it is not necessary for the Court to consider this issue.